***********
Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Amended Opinion and Award of Deputy Commissioner Glenn.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant and plaintiff at all relevant times.
3. Defendant was an approved self-insured at all relevant times.
4. Plaintiff's average weekly wage was $518.65, yielding a compensation rate of $345.78.
5. Plaintiff was employed by Fieldcrest Cannon, Inc. (now dismissed as party defendant) from July 31, 1967 through June 13, 1985, and employed by defendant Cone Mills from June 17, 1985 through September 2, 1995.
6. The following exhibits were stipulated into evidence at the hearing before the Deputy Commissioner:
Pretrial agreement
 Summary of Cotton Dust Level Studies- Cone Mills, Inc. (Stipulated Exhibit One)
 Respiratory Questionnaires- Cone Mills, Inc. (Stipulated Exhibit Two)
Respiratory Function Tests (Stipulated Exhibit 3)
7. The issues to be determined by the Commission are:
 a) Whether plaintiff developed an occupational disease while in the course and scope of her employment with defendant?
b) If so, what benefits is plaintiff entitled to receive?
 c) Whether any compensation plaintiff may be entitled to receive should be increased by 10% pursuant to N.C. Gen. Stat. § 97-12?
 d) Is plaintiff entitled to attorney's fees for the unreasonable defense of this matter?
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission finds as follows:
 FINDINGS OF FACTS
1. Plaintiff was a sixty-two year old female at the time of the hearing before the Deputy Commissioner and was born on August 14, 1938. She is a high school graduate.
2. Plaintiff had asthma as a young child and asthma problems have continued throughout her life. Plaintiff began smoking as a teenager and smoked a pack and a half of cigarettes per day from her teenage years until approximately 1995. Plaintiff testified she reduced her smoking in 1995 to four or five cigarettes per day.
3. Plaintiff was employed by Craftman Finishers in Concord, North Carolina from 1960-1967, where she worked with nylon for hosiery. Plaintiff left Craftman to work for Cannon Mills/Fieldcrest, where she worked from 1970-1985. Upon leaving Fieldcrest in 1985, she went to work for Cone Mills. She remained employed with Cone Mills until 1995 when she stopped working.
4. Plaintiff and defendant Fieldcrest Cannon signed a Compromise Settlement Agreement which was approved by the Commission on November 29, 2001. All references herein to defendant are to Cone Mills, Inc., which is the only remaining defendant in this action.
5. Plaintiff worked in the weave department for defendant. The weave room contained approximately 120 looms, and plaintiff was responsible for keeping 12 to 16 looms running for the length of her shift. Plaintiff testified the material that was woven on her looms was denim.
6. When plaintiff began working for defendant, at the beginning of her shift she blew off each of the looms she was to operate. Other loom operators also blew off their respective machines prior to beginning work each day. Plaintiff testified blowing off the looms greatly increased the amount of cotton dust in the air in the area where plaintiff worked. Later in her employment, plaintiff was not required to blow off the looms.
7. When plaintiff first began working for defendant, she was not provided any kind of breathing protection. She was later given a paper mask that she wore when she was blowing off her machine.
8. In the area where plaintiff worked, cotton dust was normally visible in the air and regularly accumulated on plaintiff's body and her clothing. During the later years of plaintiff's employment, airborne levels of cotton dust were reduced.
9. Defendant administered pulmonary function tests to its employees over the years of plaintiff's employment. The tests included questionnaires for employees to complete. Plaintiff never indicated on her answers to the questionnaires that she was experiencing any breathing problems. The tests showed that plaintiff's ability to breathe decreased over the years.
10. Dr. William Charles Sherrill, a board-certified internist and pulmonary specialist, treated plaintiff from 1989 to April 2001 for respiratory problems. The first time plaintiff mentioned the possibility of a job related irritant to Dr. Sherrill was in 1995. Plaintiff's complaints of workplace problems before 1995 were limited to temperature changes and physical exertion. Plaintiff never suggested an exposure to cotton dust as a problem until 1998, three years after leaving defendant's employment.
11. Dr. Sherrill initially diagnosed plaintiff as having obstructive airways disease in the asthmatic bronchitic category. Dr. Sherrill testified that he never diagnosed plaintiff with byssinosis, which is a diagnosis he reserves for those patients with no other obvious factors associated with lung disease.
12. Plaintiff was taken out of work by Dr. Sherrill on September 2, 1995 as a result of her breathing difficulties. Plaintiff testified that changes in the weather, temperature and physical exertion all affected her breathing. Dr. Sherrill felt at that time an environmental change might improve plaintiff's respiratory condition. Exposure to cotton dust was not a factor in Dr. Sherrill's decision to take plaintiff out of work.
13. Dr. Sherrill testified that he felt it was a possibility that cotton dust contributed to plaintiff's symptoms or aggravated her condition.
14. Dr. Sherrill testified that plaintiff's exposure to cotton dust contributed to making her respiratory disease more difficult to control and contributed to her symptoms. He also stated that patients who have had childhood asthma are at an increased risk for exacerbation of respiratory symptoms in exposure of a wide variety of irritants and that cotton dust was one of those irritants. He did not specifically testify that he felt plaintiff's conditions in her employment put her at an increased risk for developing respiratory problems as compared to the general public. Dr. Sherrill explained that he was unfamiliar with the cotton dust levels at plaintiff's employment, was unaware if she wore a mask or other respiratory device while working, and had no knowledge of what durations of time she was exposed to cotton dust.
15. Dr. Sherrill testified that smoking was the primary cause of plaintiff's respiratory problems.
16. Dr. Sherrill concluded in his testimony that plaintiff's condition had improved since she left employment with defendant. Dr. Sherrill stated that since plaintiff's working status was the only factor that had changed since 1995, her exposure to cotton dust must have, in fact, irritated her condition. However, Dr. Sherrill was unaware of plaintiff's current levels of activity, her current environmental exposure to fluxuations in temperature and the quantity of her daily use of tobacco.
17. Dr. Michael DiMeo, who is board certified in pulmonary medicine and a member of the Industrial Commission's Textile Occupational Disease Panel, at defendant's request performed an independent medical evaluation on plaintiff on February 8, 2000. Dr. DiMeo examined plaintiff and reviewed her medical records. Dr. DiMeo diagnosed asthma, emphysema and chronic bronchitis and categorized her impairment as Class III. Plaintiff was able to do light work, probably sitting in a chair, with no heavy lifting. Dr. DiMeo felt that plaintiff's smoking for most of her life was the significant factor in the development of the emphysema and chronic bronchitis.
18. Dr. DiMeo believed that plaintiff's work environment may have contributed as an irritant effect to her respiratory dysfunction. However, the work environment did not cause any permanent damage because her lung function appeared on record to come back to baseline or higher in subsequent spirometry. He concluded that it was very unlikely that plaintiff suffered cotton dust related lung disease from her work exposure.
19. Dr. Winfry Whicker is a family practioner who began treating plaintiff in 1970 and was treating plaintiff through the time of his deposition in November 2000. Dr. Whicker testified that cotton dust probably was a contributor to plaintiff's illness, but without other information his opinion was speculative. Dr. Whicker did not show any notations in his records of plaintiff mentioning work related irritants or reporting work related problems. Dr. Whicker stated that plaintiff had improved since leaving defendant's employment. He attributed the improvement in plaintiff's condition to plaintiff's dramatically decreased smoking.
20. Dr. Whicker was unfamiliar with the conditions of plaintiff's work exposure, had no knowledge whether plaintiff wore a mask of any type while working, or if the dying of the yarn decreased the cotton dust that became airborne or the levels at the plant. He deferred on the issues of causation to the pulmonary physicians who evaluated plaintiff.
21. Betsy J. Grindstaff, a certified industrial hygienist, monitored the weave room at the Salisbury plant from 1986 through 1995. It was her responsibility to monitor the plant to evaluate if it was in compliance with OSHA requirements. She testified that most of the yarn used in the weave room had been dyed and washed so the byssinotic components creating cotton dust from the yarn were gone. Ms. Grindstaff stated that because a very small portion of the yarn used had not been either washed or dyed, the weave room was tested even though OSHA might not require defendant to monitor the room. Ms. Grindstaff testified that she visited the plant regularly and was familiar with the conditions in the weave room where plaintiff worked.
22. Ms. Grindstaff testified that the dust visible in the room was not the type that produced respiratory dust because it was lint, a non-breathable dust. Ms. Grindstaff testified that the weave room was air-conditioned.
23. The Full Commission gives greater weight to the opinions of Dr. DiMeo and finds that the greater weight of the medical evidence fails to establish that plaintiff's employment with defendant significantly contributed to the development of her lung disease or that her employment placed her at an increased risk of developing lung disease as compared to members of the general public not so employed.
 ***********
Based upon the foregoing Stipulations and Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's lung disease was not an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant and which excluded all ordinary diseases of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex, 308 N.C. 85, 301 S.E.2d 359 (1983).
2. Plaintiff is not entitled to benefits under the Workers' Copensation Act for her lung disease. N.C. Gen. Stat. § 97-2 et seq.
 ***********
Based on the foregoing findings of facts and conclusions of law, the Full Commission makes the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be and is hereby DENIED.
2. Each side shall pay their own costs.
This the ___ day of May 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER